## LAWNER v. KATZMAN.

### No. 3091.

Court of Customs and Patent Appeals.

April 12, 1933.

Max D. Ordmann, of New York City, for appellant.

Denison & Thompson, of Syracuse, N. Y. (Eugene A. Thompson, of Syracuse, N. Y., and T. K. Bryant, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority of invention to appellee in an interference proceeding involving a patent issued to appellant on April 19, 1927, upon an application filed June 8, 1926, and an application of appellee filed January 3, 1928.

There is but a single count in the issue, copied from appellant's patent, which reads as follows: "An electric vaporizer comprising a receptacle, a removable lid therefor, an electric heater suspended from said lid and having outwardly projecting terminals for the engagement of an electric plug and means engaging said receptacle and said plug to prevent the removal of said lid while the plug is in engagement with said terminals."

The last element of said count appears to express the essential novelty of the contested invention.

As embodying said element, appellant discloses in his patent a stand comprising a base and vertical post projecting from the base, upon which is formed a rectangular plug-embracing member; while appellee in his application shows a stand comprising a base and two vertical members projecting upwardly therefrom which slidably support a plug-carrying bail. While the construction of the devices of the respective parties is not identical it is conceded that the count reads upon both structures.

The invention is described in the decision of the Board of Appeals as follows: "The invention relates to a vaporizer intended for use in the treatment of bronchial diseases such as asthma, etc. The vaporizer comprises a closed receptacle as a glass jar in which the liquid to be vaporized is contained. The cover for the jar has screw threaded engagement therewith and serves as supporting means for a pair of electrodes which depend into the solution. The cover also has a nozzle or spout through which the vapors pass. The upper surface of the cover is provided with upstanding terminals for the electrodes and these terminals may be engaged by an ordinary plug at the end of a flexible cord such as is commonly employed with electrical appliances. The receptacle is mounted on a stand and in order to prevent the cover from being removed from the receptacle when the plug is in engagement with the terminals, a connection is provided between the stand and plug which prevents rotation of the latter and consequently also rotation of the cover

with respect to the receptacle when the plug is in engagement with the terminals."

Inasmuch as appellee's application was not filed until after the issue of the patent to appellant, the burden was upon appellee to establish priority of invention beyond a reasonable doubt.

Appellant in his preliminary statement alleged conception of the invention on or about April 30, 1924, and disclosure to others on that date; that he embodied his invention in a full-sized device which was completed about the 25th of March, 1926, and successfully operated on that date.

Appellee in his preliminary statement alleged conception of the invention on or about February 15, 1926, disclosure to others on March 1, 1926, and that about March 22, 1926, he completed a full-sized working device.

Both tribunals of the Patent Office held that there were not independent inventions involved, but that the issue was strictly a case of originality of invention, and that appellant derived the invention from appellee.

It appears from the testimony that, prior to March, 1926, appellant had been engaged in the manufacture of various kinds of wearing apparel, and that appellee had been, and was at said time, engaged in the manufacture of electric water heaters, and was also engaged in the furniture business. Appellant's sister was the wife of one Tartikoff, who was the brother of appellee's wife, and the parties hereto had been acquainted with each other for some years prior to 1926.

It is appellant's contention that in 1923 appellee explained to him the water heater which he was manufacturing and the principles of its operation; that in the latter part of September, 1924, his, appellant's, child was ill and it was necessary to give it steam inhalations, which was done by the use of a vaporizer then on the market; the heating element of which was an alcohol stove; that when so used by his wife it caught fire and when, in the evening, appellant returned home and was told by his wife of this occurrence, he shortly thereafter conceived the invention in issue; that while he had never, previous to that time, been engaged in any form of electrical business, he had done general reading upon the subject of electricity; that he made two sketches embodying the invention, which he offered in evidence; that shortly thereafter he went to the shop of his father, who was engaged in the tinsmith and plumbing business, and made three models

of the invention, all of which were completed before the middle of October, 1924, said exhibits being marked Lawner Exhibits C, D, and I, and introduced in evidence; that he disclosed the invention to his wife and father immediately after conception, and about six months thereafter to appellee, showing him one of the devices that he, appellant, had constructed; that appellee stated that he was not interested in the device; that in the month of December, 1925, appellant disclosed the invention to one Duberstein in an endeavor to interest him in the production and marketing of the invention; that at that time said Duberstein declined to become financially interested in the matter; that in March, 1926, when appellee was visiting a relative in Brooklyn, he told appellant that he had investigated the possibilities of the vaporizer and was ready to go in with him for the purpose of manufacturing and selling such vaporizers, but that he did not think it was necessary to have any stand for the vaporizer, stating that the cost of the vaporizer with a stand would be too great for its successful marketing; that at that time appellee had with him a vaporizer without a stand; that appellant insisted that, because of the danger of shock to the user of a vaporizer, a stand which would prevent the removal of the receptacle from the lid before the circuit had been disconnected was absolutely necessary, whereupon appellee stated that he did not care for appellant's stand, but would have one made up by the Scovill Manufacturing Company of Waterbury, Conn., who had clever engineers and would be able to make a better stand than that produced by appellant; that thereupon appellant and appellee joined forces, appellant to act as salesman and appellee to manufacture the vaporizers, prepare or have prepared an application for a patent on the invention for appellant, and appellee was to pay appellant, as the vaporizers were sold, $5 per dozen as compensation for his invention and his efforts toward marketing the device; that no written agreement was entered into; that said arrangement was to be temporary only, and that later on, when the business had been more developed, a permanent arrangement would be made; that appellant thereafter, within a period of six or seven weeks, sold said vaporizers, with a promise that a suitable stand would be provided, to more than thirty wholesale drug firms; that said sales were made under the name of the Renwal Sales Company (Renwal being appellant's name spelled back-

wards), appellant maintaining a business office in the office of Tartikoff, appellee's brother-in-law; that after said period of six or seven weeks, appellant terminated the agreement with appellee because of the failure of appellee to live up to his promises, such as the sending out of circulars describing the invention, and the filing of an application for patent on the invention; that about the end of May, 1926, appellant again approached said Duberstein upon the subject of becoming financially interested in his invention, and that an agreement was entered into between them for the manufacture and sale of appellant's vaporizer; that, as their first step, they employed one Guido to make dies for manufacturing the stand for the vaporizer, and, they having been found satisfactory, appellant and Duberstein organized the American Sundries Company, Inc., about June, 1926, and about July of that year began manufacturing a vaporizer, the stand of which embodied the invention here involved; that said Guido for a time manufactured said stand, and that the other parts of the device were procured from various sources, the heating arrangement being practically the same as that employed by appellee in his water heaters; that about October, 1926, appellant received a letter from appellee's attorneys stating that appellant's device was very similar to the device being manufactured by the Kant Kool Electric Water Heater Company, for which device applications for patent were pending, and that as soon as one or more patents were issued upon said applications, the American Sundries Company would be held liable for infringement, which letter was introduced in evidence; that thereupon appellant changed the form of the heating element in the device so as to avoid infringement of the heating element used by appellee; that prior to making said change, and a few days after receiving said letter from appellee's attorneys, appellant's attorneys replied to the same, stating for the American Sundries Company, Inc., that they did not know what the products of appellee's company were, nor what, if any, claims of their applications had been allowed; that applications for patent for electrically heated vessels produced by said American Sundries Company, Inc., had been pending for some time, and stating that said company was prepared to defend the priority of their invention; the letter also suggested that if the claims in the applications of the parties were in conflict, it might be advisable to have an interference declared. This let-

ter was introduced in evidence, and appellant testified that no reply was received to it.

Appellant's testimony as to conception, disclosure, and construction of the device embodying the invention, was corroborated in substantially all its details by his wife, and as to disclosure in 1925 and activities subsequent to May, 1926, by said Duberstein, with whom appellant became associated as aforesaid.

As hereinafter pointed out, the record contains no corroborative evidence of appellant's testimony by disinterested parties.

Appellee, upon the other hand, contends that he conceived the invention in issue about February, 1926, and disclosed it to others immediately thereafter; that he was using a vaporizer with an alcohol burner, and that while so in use it caught fire; that the idea then occurred to him that a vaporizer could be so constructed electrically as to be absolutely safe to the user; that at that time he was engaged in the manufacture and sale of electric water heaters at Ogdensburg, N. Y., under the name of the Kant Kool Electric Water Heater Company, and had employed in his factory two men named Brennan and Doe; that shortly after his conception said Brennan, under his direction, made several models of appellee's device, which models were introduced in evidence as Katzman Exhibits 3, 4, 5, and 6; that Exhibit 3 embodies the invention here in issue; that in March, 1926, appellee and his wife visited New York to attend a wedding, taking with him a part of the device to show his relatives; that he did not take with him a model of the stand which is the essential element of the invention here in issue; that he disclosed the invention here involved to relatives, including his brother-in-law, said Tartikoff, who asked appellant if he was looking for a salesman; upon replying in the affirmative, said Tartikoff recommended his brother-in-law, appellant, for such position and brought about a meeting between appellant and appellee; that at such meeting appellee disclosed to appellant the invention in issue, appellant professing ignorance as to the principles of its operation, and that appellee made an oral agreement with appellant that the latter should act as salesman for vaporizers manufactured by appellee's company, the Kant Kool Electric Water Heater Company, appellant's compensation to be $5 per dozen for all vaporizers sold by him, and that all orders were to be taken in the name of said company; that thereafter, in the

month of March, appellee visited Waterbury, Conn., and there interviewed one Bennett, the electrical engineer for the Scovill Manufacturing Company, and one Perry, an employee of said company, to whom he disclosed the invention in issue and requested them to furnish estimates of the cost of its manufacture; at that time appellee did not have with him the complete device, but only the top, the spout, and the plug connection at the top, but explained to said Bennett the construction that he desired, embodying the invention here involved; that thereupon the draftsman of said company, under the direction of said Bennett, prepared drawings which were completed on May 17, 1926, a photostatic copy of which was received by appellee some time during the said month of May; that this drawing, which was introduced in evidence, discloses the invention here involved; that on June 3, 1926, appellee wrote to said Scovill Manufacturing Company, expressing satisfaction with the drawing and requesting an estimate of the costs of the device, constructed in accordance with said drawing, in lots of 25,000 to 100,000; that on July 6, 1926, said company wrote appellee offering to manufacture and sell to him the device embodying the invention here involved at a specified price; that appellee considered the offered price too great to enable him to market the device successfully, and continued to manufacture the device in accordance with his model 6 at a cheaper cost; that said model 6 differs from the invention here in issue, in that the container may be separated from the balance of the device without disconnecting the electrodes from the source of power supply; that on June 8, 1926, appellee made application for a patent for the invention embodied in said Exhibit 6, and on May 17, 1927, he received a patent therefor; that appellee sent to appellant a sample of said Exhibit 6, upon which all orders secured by appellant were taken; that appellant insisted that no stand for the device was necessary; that in the month of April, 1926, appellee's wife, at the dictation of appellant, wrote to appellee a letter which was introduced in evidence, wherein appellant acknowledged the receipt of a package "containing the stand, photograph, etc.," and stating that the stand "brings the price up entirely too high for it to be a large seller," and that the stand "is not quite practical and does not give the service that it is intended for," and further stating that "I really believe that if you find you cannot manufacture a stand within the price

of $15 per dozen, that we can safely put out the product to the trade without any stand whatsoever and sell it as we are showing it at the present time"; that after appellant had acted as salesman for about a month, appellant's employment was terminated by appellee for the reason that appellant was taking orders for the vaporizer under the name of the Renwal Sales Company, contrary to the instructions he had received from appellee; that late in the fall of 1927 appellee began to make and sell vaporizers embodying the invention here in issue, a sample of which was introduced in evidence as Katzman's Exhibit 9.

Appellant's testimony in support of his contentions was, as hereinbefore observed, corroborated only by interested parties, his wife and business associate.

The testimony of appellee is supported as to conception, disclosure, and making of a device embodying the invention in February, 1926, by appellee's wife and said Brennan; said Brennan, at the time of the taking of testimony herein, may be considered to be a disinterested party inasmuch as he had left appellee's employ more than a year and a half prior to that time. Bennett, who, acting upon instructions of appellee, directed the making of the drawings, which drawings were completed on May 17, 1926, is also a disinterested party.

Both tribunals of the Patent Office held that, under the evidence presented, independent inventions were not involved, but that the issue to be determined was strictly originality of invention, and that it was established beyond a reasonable doubt that the invention originated with appellee and not with appellant.

We have carefully examined the evidence in the record and we agree with the conclusion reached by the Patent Office tribunals. The evidence, taken as a whole, establishes to a moral certainty that appellant derived the invention from appellee.

We will not here undertake to refer to all the evidence which leads us to this conclusion, but will point out some of the most important features which compel us to reject the testimony for appellant.

Appellee has established beyond a reasonable doubt, by the testimony of the disinterested parties Brennan and Bennett, that he was in possession of the invention here involved prior to June 8, 1926, the filing date of appellant's application upon which his patent was issued.

Appellant's claim that he conceived the invention in 1924 and disclosed it to appellee in 1925 is, we think, discredited by the following facts, among others: Appellant testified that in 1924 he made by hand three devices embodying the invention here involved; the work being done in the shop of his father, who was a tinsmith and plumber. Appellant offered in evidence three devices, Exhibits C, D, and I, which, he testified, he made at said time. This testimony was corroborated by appellant's wife, while his associate, Duberstein, testified that he was shown said exhibits by appellant in 1925. The witness Guido, appearing in behalf of appellee, testified that he made Exhibits D and I at the request of appellant in June, July, or August, 1926, but that he did not make Exhibit C. Guido was by trade a tool and die maker, and testified that the base, handle, and loop of Exhibits D and I were cut and stamped by a press. We have carefully examined said Exhibits D and I, and it is apparent to us that the handle and loop, at least, were stamped parts, whereas Exhibit C shows plainly that said parts were made by hand. If the testimony of appellant and his witnesses is not to be credited as to Exhibits D and I, we see no reason why it should be credited as to Exhibit C; there being no corroborating evidence by disinterested parties.

The witness Guido testified that appellant, when he approached him with respect to his manufacturing the stands embodying the invention, did not exhibit any model of appellant's device, but that appellant and the witness together made a sketch or drawing of the same; the witness following the instructions of appellant. Appellant's testimony is that he had Exhibits C, D, and I in his possession at his home in the same city where Guido lived when he approached the latter, and, if that were true, it seems to us he would naturally have exhibited one or more of them to the witness Guido. It is true that appellee did not take with him to the Scovill Manufacturing Company his complete device, but this is reasonably explained by him on the ground that when he left his home in Ogdensburg he had formed no intention of visiting the Scovill Manufacturing Company.

While the testimony of the witness Guido is somewhat confusing, it being apparent that he had a poor command of the English language, we do, as did the Board of Appeals, attach weight to his testimony.

Another circumstance discrediting appellant's claim of originality is the fact that, when he undertook the sale of appellee's device, the sample sent him upon which to take orders did not embody appellant's claimed invention, but did cover the invention for which appellee received a patent on May 17, 1927, while appellant in his testimony stated that he was to receive $5 per dozen as compensation for his invention and selling the same. While appellant denies full responsibility for the letter written to appellee in April, 1926, which appellee's wife testified was dictated to her by appellant, he admits that he did dictate a letter to her to be sent to appellee, and we are convinced that he did dictate all of it as it appears in evidence.

In his testimony appellant testified positively that he had insisted that a stand embodying his alleged invention was absolutely necessary for the commercial success of the vaporizers, and yet, in the letter referred to he suggests discarding the idea of furnishing a stand with the vaporizer; in other words, he suggests the discarding of the only feature of the device which he now claims was his invention, and for which he was to receive compensation.

Appellant testified that he disclosed his invention to his wife, his father, and Duberstein, then a neighbor, and later a business associate; appellant also testified that his father was not living at the time of taking the testimony herein. He further testified that his mother-in-law lived with him, and that his brother-in-law lived in the same house, occupying the upstairs portion, but that he did not disclose the invention to either of these persons although the mother-in-law was aware, he said, of the incident of the alcohol lamp taking fire, which incident led him to conceive the invention. His only explanation of this failure is that he desired to keep his invention secret so far as possible. This explanation does not impress us when considered in connection with his testimony regarding disclosure to Duberstein and appellee, for there is nothing in said testimony that he requested them to regard his purported disclosure as confidential.

Appellant in his preliminary statement stated that he embodied his invention in a full-sized device which was completed about March 25, 1926. In his testimony he stated that this was an error, but did not explain how the error came to be made. He did testify, however, that he operated the device he first made in 1924, which did not include

the invention here involved, and found that upon unscrewing the lid from the jar he received an electric shock, which led him to perfect the device by embodying the invention here involved. The inference to be drawn from his testimony, if credible, is that he embodied his invention in a full-sized device which was completed in 1924, whereas under oath in his preliminary statement he gave the date as March 25, 1926. It would seem that if he really did embody his invention in a full-sized device in 1924 he would have remembered that fact when he made his preliminary statement.

Another circumstance proper to be considered is that appellant had had no actual experience in the art to which the invention relates, he having been a manufacturer of wearing apparel; while appellee had for some years been engaged in the manufacture of an electrical water heating device covered by a patent to one Martin, and had practical experience in electrical construction in connection therewith. It has been held that when each of two parties to an interference claims a disclosure to the other, the presumption is in favor of the one who has a practical knowledge of the art, and against the one who has not such knowledge. Alexander v. Blackman, 26 App. D. C. 541. Irrespective of whether such rule should be applicable to all cases, it certainly should apply to cases like that at bar where technical skill is involved.

Appellant, however, argues that certain testimony of appellee negatives the claim that he, the appellee, was the inventor, and particularly calls attention to appellee's testimony wherein he states that in September, 1926, he purchased one of appellant's devices and saw marked thereon the words "Patent Pending." From this testimony appellant draws the inference that if appellee had a model of the device made in February or March, 1926, he would not have waited until January 3, 1928, to file an application for a patent thereon.

With respect to this contention, it is sufficient to say that the evidence establishes beyond a reasonable doubt that appellee did have a device embodying the invention here involved, constructed in February, 1926. Under the circumstances of this case, we do not think that appellant's delay in applying for a patent is sufficient to raise a doubt that he was not the original inventor of the device here involved.

Appellant also contends that appellee has not denied that appellant disclosed the invention to him in 1925, as testified to by appellant. While it is true that the record contains no categorical denial of such testimony of appellant, it does amply show that appellee throughout claimed to be the inventor of the device here involved and affirmatively testified that when he first disclosed the invention to appellant he, the appellant, exhibited ignorance of the principles upon which it operated. In view of this testimony, it cannot be held that appellant's testimony of disclosure of the invention to appellee in 1925 was not rebutted by appellee's testimony.

The foregoing facts, together with others appearing in the record of less importance, lead us to the conviction that the Board of Appeals did not err in affirming the decision of the Examiner of Interferences, awarding priority of invention to appellee, and its decision is affirmed.

Affirmed.